YOUNG, C.J.
Michigan’s Use Tax Act (UTA)[1] imposes a 6% tax on a consumer’s use, storage, and consumption of all tangible personal property in Michigan.[2] The UTA exempts the use of property from imposition of the use tax when “the [sales] tax was due and paid on the retail sale to a consumer.”[3] Concurrently, Michigan’s General Sales Tax Act[4] (GSTA) imposes a 6% tax on a retailer’s gross proceeds, to be remitted by the retailer to the *165 Department of Treasury (the department).* ***[5] At issue before this Court is whether a purchaser and user of tangible personal property may avail itself of the use tax exemption when it is unable to prove payment of sales tax, either by itself to the retail seller at the point of sale or by the retail seller to the department.
The burden of proving entitlement to the exemption rests on the party asserting the right to the exemption.[6] Under the plain language of the use tax exemption, MCL 205.94(l)(a), we hold that when the retail seller does not admit that sales tax was collected or paid on a particular sale of tangible personal property, the user of that property must show that it paid sales tax on the purchase of that property before the user can claim an exemption from the use tax. Accordingly, we reverse the portion of the Court of Appeals’ decision that held that the use tax can never be levied on property if the purchase of that property was merely subject to sales tax.
FACTS AND PROCEDURAL HISTORY
Plaintiff Andrie Inc. is a Michigan corporation engaged in marine construction and transportation. Andrie’s marine transportation division transports asphalt and other products throughout the Great Lakes to customers in the Midwest and Canada using tugboats and barges. Andrie purchases fuel and other supplies for its business, some of which are purchased in Michigan from Michigan sellers.
*166 The department conducted a use tax audit of Andrie covering November 1,1999, through July 31, 2006. The department’s auditor reviewed Andrie’s purchases of tangible items, including the in-state fuel and supply purchases. Where the auditor determined an item was subject to use tax, the auditor requested that Andrie provide proof that sales tax was paid. If Andrie produced a receipt showing that it had paid sales tax to the retail seller, the department applied the exemption in MCL 205.94(l)(a) and did not assess use tax. But if Andrie could not prove that sales tax had been paid, either by itself or the retail seller, the department assessed Andrie the use tax for that property.
The department ultimately imposed use tax on fuel and supply purchases Andrie made in Michigan, from Michigan-based retail sellers, where the invoice did not list sales tax as a separate line item, i.e., where Andrie was unable to prove that sales tax had been paid on those transactions as required by MCL 205.94(l)(a). Notably, the department concedes that it is unaware whether any of these Michigan retail sellers had, in fact, remitted sales tax to the department.
As a result of the audit, the department determined that Andrie understated its use tax in the amount of $398,755.00. Andrie paid the assessments under protest and filed suit in the Court of Claims. In its complaint, Andrie alleges that it was entitled to rely on an alleged requirement of the GSTA that the sales tax be included in the price of the goods purchased regardless of whether the sales tax was separately stated.
The Court of Claims held that Andrie was entitled to a partial refund of use tax for those purchases that were subject to sales tax. That court reasoned that Andrie was entitled to a presumption that sales tax is included in the price of goods purchased, and therefore Andrie *167 did not have the obligation to provide proof that the retail sellers remitted sales tax to the department. The department appealed. The Court of Appeals affirmed on this issue, holding that “the mere fact that a transaction is subject to sales tax necessarily means that the transaction is not subject to use tax.”[7] It further stated that, “[bjecause the retailer has the ultimate responsibility to pay any sales tax, it is erroneous to place a duty on the purchaser to show that the sales tax was indeed paid to the state. Thus, the transactions are not subject to use tax, and the trial court properly held in favor of plaintiff on this issue.”[8]
STANDARD op review
Statutory interpretation is a question of law that we review de novo.[9] When interpreting a statute, courts must “ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute.”[10] This requires us to consider “the plain meaning of the critical word or phrase as well as 'its placement and purpose in the statutory scheme.’ ”[11]
DISCUSSION
As a preliminary matter, we note that the use and sales taxes are complementary and supplementary.[12] *168 Contrary to the Court of Appeals’ conclusion, their potential applications are not mutually exclusive.[13] The two taxing statutes relate to entirely separate taxable events: the use and the sale of tangible personal property. The UTA imposes a 6% tax on the use, storage, and consumption of all tangible personal property in Michigan:
There is levied upon and there shall be collected from every person in this state a specific tax for the privilege of using, storing, or consuming tangible personal property in this state at a rate equal to 6% of the price of the property or services specified in section 3a or 3b.[14]
Meanwhile, the GSTA imposes a 6% tax on the sale of all tangible personal property in Michigan:
[T]here is levied upon and there shall be collected from all persons engaged in the business of making sales at retail, by which ownership of tangible personal property is transferred for consideration, an annual tax for the privilege of engaging in that business equal to 6% of the gross proceeds of the business, plus the penally and interest if applicable as provided by law, less deductions allowed by this act.[15]
Absent an exception, tangible personal property sold and used in Michigan is subject to both use and sales tax. It is plain to see from the text of each taxing statute that they are capable of being levied upon the same property, as long as the respective predicate taxable events (i.e., use and sale) take place.
*169 Just as each tax is triggered by a separate taxable event, the legal responsibility for each tax falls upon a separate entity. The legal responsibility for the use tax falls solely on the consumer.[16] By contrast, the legal responsibility for the sales tax falls on the retail seller, with the tax being levied for the privilege of making sales at retail.[17] The retail seller is authorized — but not obligated — to pass the economic burden of the sales tax by collecting the tax at the point of sale from the consumer.[18] But whether the consumer remits sales tax to the retail seller or the seller pays the sales tax from another source, the seller is responsible for remitting the sales tax to the department, which tax is calculated as a percentage of the seller’s gross proceeds in a taxable period.[19]
Although the use and sales taxes potentially apply to the same tangible personal property, a taxpayer otherwise subject to use tax is entitled to an exemption if it complies with any of the conditions delineated by MCL 205.94. One of these exemptions involves payment of the sales tax:
(1) The following are exempt from the tax levied under this act...:
(a) Property sold in this state on which transaction a tax is paid under the general sales tax act, 1933 PA 167, MCL 205.51 to 205.78, if the tax was due and paid on the retail sale to a consumer.[20]
*170 The exemption statute unambiguously requires payment of the sales tax before it exempts the taxpayer from the use tax. It is not enough that the sales tax was due on the retail sale of the property; rather, sales tax must be both “due and paid” before the exemption applies. Thus, the department properly assessed use tax on in-state purchases where Andrie failed to submit evidence that sales tax was actually paid at the time of sale.
Our conclusion that the terms of the use and sales taxes render them capable of being applied to the same property does no violence to the “targeted legislative effort to avoid double taxation.”[21] Pursuant to MCL 205.94(l)(a), payment of the sales tax is mutually exclusive with payment of the use tax, but the same cannot be said of the potential applicability of the respective taxes to a given article of tangible personal property. In case law discussing double taxation, the threat of double taxation was a real consequence of the department’s position;[22] here, double taxation is at best a hypothetical reality, and at worst a straw man. The taxpayer, as the beneficiary of the exemption, has the tools to ensure that it is not double-taxed. It may, as part of its freedom to contract with retail sellers, demand proof at the point of sale that the sales tax was *171 paid. Even if it misses that opportunity (which would be its responsibility alone), after the fact, the taxpayer can request an affidavit from the retailer averring that the tax was either collected at the point of sale or remitted to the department.[23] In short, any double taxation that could occur in this situation is traceable to the taxpayer’s recordkeeping and not, as seen in other cases, the statutory scheme.
As an alternative to its argument that the use tax can never apply to property on which sales tax should be paid, Andrie asserts that it is entitled to a presumption that sales tax is included in the prices paid to retailers when its receipts to do not list sales tax as a separate line item. A taxpayer is entitled to the use tax exemption in MCL 205.94(1)(a) when it proves that it paid sales tax to the retail seller.[24] This is true even when the retail seller — who technically bears the legal responsibility for payment of the sales tax — does not remit the tax to the department.[25] However, we hold that a purchaser is not entitled to a presumption that it paid the sales tax at the point of sale. The burden of proving entitlement to an exemption rests on the party asserting the right to the exemption.[26] A presumption of sales tax payment would shift this burden to the department, *172 contrary to established law regarding tax exemptions. At the very least, a purchaser-taxpayer must show that it paid tax to the retail seller, or that the seller remitted the sales tax to the department. Andrie submitted no evidence that it paid sales tax to the retail seller, or that the seller remitted sales tax to the department on that sale. As a result, it did not meet its burden, and it is not entitled to the exemption.
Furthermore, in conjunction with the fact that Andrie bears the burden to demonstrate its entitlement to a tax exemption, a presumption that sales tax is always included in an item’s purchase price would violate established canons of statutory interpretation. A statute’s words should not be ignored, treated as surplusage, or rendered nugatoiy.[27] MCL 205.94(l)(a) requires that sales tax be both “due and paid” before property is exempted from the use tax. A presumption that a purchaser paid the sales tax would, in effect, entitle a purchaser to the exemption whenever sales tax is merely due without having to satisfy its burden to show the tax was paid. This would render superfluous the plain language of the requirement in MCL 205.94(1) (a) that sales tax be both “due and paid.” The plain language of the use tax exemption precludes a presumption that sales tax is always paid.
Andrie grounds its statutory argument for a presumption of sales tax payment in MCL 205.73(1),[28] *173 which states:
A person engaged in the business of selling tangible personal property at retail shall not advertise or hold out to the public in any manner, directly or indirectly, that the tax imposed under this act is not considered as an element in the price to the consumer. This act does not prohibit any taxpayer from reimbursing himself or herself by adding to the sale price any tax levied by this act.
In other words, MCL 205.73(1) states that a retail seller may not state or imply that an item’s purchase price does not include sales tax, either as a separate line item or otherwise. Although this restriction on retail sellers’ representations is certainly consistent with Andrie’s proposed presumption that sales tax is always included in an item’s purchase price, it does not compel this Court to recognize such a presumption. MCL 205.73(1) is an advertising statute; its terms do not extend beyond a restriction on retail sellers’ representations to the public.[29] The statute does not purport to *174 define the actual components of an item’s purchase price. Thus, MCL 205.73(1) does not relieve Andrie of its duty to prove that sales tax was paid.
In addition to its overbroad reading of the statutory text, Andrie’s argument — that MCL 205.73(1) creates a presumption that sales tax is always included in an item’s purchase price — is premised on the faulty assumption that a retail seller must exclusively use sales revenue to pay its sales tax liability. Were that the case, Andrie might have a point that a purchaser necessarily pays the sales tax at the point of sale; otherwise, the retailer would be unable to remit any sales tax to the department. However, nothing in the GSTA prevents a retail seller from paying its sales tax liability from other sources. Under MCL 205.73(1), a retail seller is “not prohibited” from including sales tax in an item’s price, but this leaves the retail seller the option to shoulder the sales tax burden itself. In that event, the retail seller may remit the tax from its gross proceeds or from another source entirely.[30] Because there is no statutory directive in MCL 205.73(1) directing a retail seller to include sales tax in the price it charges purchasers, the statute fails to establish a presumption that sales tax is always included in an item’s purchase price.
This Court applied a nearly identically worded predecessor of MCL 205.73(1) in Swain Lumber Co v *175 Newman Dev Co.[31] In that case, the plaintiff believed it was selling to a purchaser at wholesale (to which no sales tax applied), when in fact the nature of the purchaser’s business meant that the sale was at retail (to which sales tax applied). After the transaction was complete, the nature of the purchaser’s business was discovered, and the department assessed plaintiff the sales tax because the sale was at retail. Plaintiff unsuccessfully sued to recover sales tax from the purchaser. This Court stated:
No presumption against [a purchaser] arises from the silence of [a purchaser] as to non-inclusion of sales tax in the price before or at the time of [the purchaser]’s paying the price demanded.
[MCL 205.73(1)] creates no liability on the part of the purchaser to pay the tax unless the tax is incorporated in or added to the price and the purchaser accepts the tangible personal property with such understanding.[32]
According to Andrie, Swain Lumber holds that, whenever sales tax is not listed on an invoice, the sales tax was incorporated into the retail price of the goods and thus paid by the purchaser. This is not accurate.[33] *176 Swain Lumber merely reiterates that the legal responsibility for the sales tax falls on the retail seller: if a purchaser does not knowingly agree to pay the tax and the seller fails to include the tax in the sale price, a seller may not claw back a separate sales tax reimbursement at a later date. This conclusion allows for the possibility that sales tax is not incorporated into an item’s sale price. Although a retail seller has a legal obligation to remit sales tax even if it does not affirmatively shift the tax burden to the purchaser, this does not mean that the tax necessarily was paid by the seller such that the use tax exemption in MCL 205.94(l)(a) applies.
RESPONSE TO THE DISSENT
The dissent fails to defer to the rule of statutory construction precluding surplusage in interpreting the phrase “due and paid,” and instead asks us to apply the use tax exemption whenever sales tax is merely due. To that end, the dissent would reverse the rule that we established unambiguously in Elias Brothers: that the burden to prove entitlement to a tax exemption rests upon the person claiming the exemption. But despite the dissent’s contention, the consumer is not in need of a presumption that the sales tax was paid, because the consumer is able to prove his entitlement to the exemption in every case.
The dissent states that the consumer never pays the sales tax because the GSTA “places no duty on a *177 consumer for the payment of the tax.”[34] But the fact that a consumer has no duty to pay the tax does not mean that the consumer has no ability to establish that he is entitled to the exemption. This is supported by statute: MCL 205.73(1) permits the retailer-taxpayer to “reimburs[e] himself or herself by adding to the sale price any tax levied by [the GSTA].” Note that the statute does not merely permit the taxpayer to charge the consumer the value of the tax — a relevant distinction according to the dissent. Rather, MCL 205.73(1) permits the retailer-taxpayer to include the sales tax itself: the retailer may add “tax” “to the sale price.” Therefore, we respectfully disagree that a consumer cannot pay the sales tax for use tax exemption purposes simply because the retail seller is ultimately on the hook for remitting the tax to the department.
Accordingly, one can see that the consumer remains fully equipped to obtain the documentation necessary to later claim the exemption. With knowledge of its burden in mind,[35] at the point of sale the consumer can bargain for a receipt that shows the inclusion of sales tax in the purchase price. Alternatively, it may request an affidavit from the retail seller averring that sales tax was included in the sale price or remitted to the department. In either instance, the consumer shows that the sales tax was paid. It is that simple.
The dissent emphasizes recordkeeping requirements, i.e., retailers’ mandate to record their sales tax information, as justification that consumers (who are not *178 required to keep such records) are entitled to a presumption of sales tax payment. Recordkeeping requirements exist so that the department may confirm the tax liability of a taxpayer.[36] They do not exist to facilitate a taxpayer’s claim of an exemption. Further, “exemptions are the antithesis of tax equality.”[37] If a mandatory recordkeeping requirement existed in order to facilitate an exemption claim (rather than to facilitate taxation), it would promote exemptions and, in turn, tax inequality. But that would run counter to the reasoning underlying the Elias Brothers rule. Accordingly, recordkeeping requirements are not relevant in determining who has the duty to prove entitlement to an exemption.
Of course, the Legislature could have made it less burdensome for the consumer to avail itself of the use tax exemption. However, under Michigan law, a burden exists, and under Elias Brothers that burden is shouldered by the person seeking a tax exemption. Short of ignoring the statutory text of MCL 205.94(l)(a) (“. .. and paid”) or reversing Elias Brothers, the department must prevail in this matter.
CONCLUSION
In order to be entitled to the exemption from the use tax found in MCL 205.94(l)(a), one must show that the sales tax was both due and paid on the sale of that tangible personal property. The burden of demonstrating entitlement to this tax exemption rests on the taxpayer seeking the exemption. Accordingly, because Andrie has not submitted any evidence that sales tax was paid, Andrie has not carried its burden and is not entitled to the exemption delineated in MCL 205.94(l)(a). We reverse *179 that portion of the Court of Appeals’ judgment which held that the use tax can never be levied on property if the purchase of that property was subject to sales tax.
Markman, Kelly, McCormack, and Viviano, JJ., concurred with Young, C.J.
CAVANAGH, J. I concur in the result only.

 MCL 205.91 et seq.

 MCL 205.93(1). For purposes of this opinion, the use, storage, or consumption of tangible personal property are collectively referred to as “use” of the property

 MCL 205.94(l)(a).

 MCL 205.51 et seq.

 “[T]here is levied upon and there shall he collected from all persons engaged in the business of making sales at retail, by which ownership of tangible personal property is transferred for consideration, an annual tax for the privilege of engaging in that business equal to 6% of the gross proceeds of the business, plus the penalty and interest if applicable as provided by law, less deductions allowed by this act.” MCL 205.52(1).

 Elias Bros Restaurant v Treasury Dep’t, 452 Mich 144, 150; 549 NW2d 837 (1996).

 Andrie, Inc v Dep’t of Treasury, 296 Mich App 355, 372; 819 NW2d 920 (2012).

 Id. (Citation omitted.)

 In re Investigation of March 1999 Riots in East Lansing, 463 Mich 378, 383; 617 NW2d 310 (2000).

 Koontz v Ameritech Servs, Inc, 466 Mich 304, 312; 645 NW2d 34 (2002).

 Sun Valley Foods Co v Ward, 460 Mich 230, 237; 596 NW2d 119 (1996), quoting Bailey v United States, 516 US 137, 145; 116 S Ct 501; 133 L Ed 2d 472 (1995).

 See Elias Bros, 452 Mich at 153.

 In reaching its conclusion, the Court of Appeals relied upon Elias Bros, 452 Mich at 146 n 1 (“The [UTA] ... covers transactions not subject to the general sales tax.”) (emphasis added). For reasons explained below, this was an inaccurate restatement of the plain language of the UTA and the GSTA, including MCL 205.94(l)(a). Indeed, Elias Bros later acknowledges that “the use tax provisions except property acquired in a transaction in this state on which a sales tax has been paid ....” Id. at 153 n 19 (emphasis added).

 MCL 205.93(1).

 MCL 205.52(1).

 Terco, Inc v Dep’t of Treasury, 127 Mich App 220, 226, 339 NW2d 17 (1983).

 See MCL 205.52(1); Ammex, Inc v Dep’t of Treasury, 237 Mich App 455, 460; 603 NW2d 308 (1999).

 Ammex, Inc, 237 Mich App at 460. See also MCL 205.73(1).

 See MCL 205.52(1). For reasons explained later in this opinion, the fact that a retail seller has a legal obligation to remit sales tax to the department does not mean that the sales tax necessarily was paid on a retail sale to a purchaser under MCL 205.94(l)(a).

 MCL 205.94(l)(a) (emphasis added).

 See Elias Bros, 452 Mich at 152.

 For example, in Elias Bros, if the taxpayer was not given the benefit of the industrial processing exemption to the use tax, MCL 205.94(g), it was a certainty that the taxpayer would pay tax on the components used or consumed in the product’s manufacture and on the end product it sold, contradicting the Legislature’s purpose in enacting the industrial processing exemption. Id. In World Book, Inc v Dep’t of Treasury, this Court addressed the very real risk of subjecting a taxpayer to multiple states’ sales taxes by acknowledging that a retail sale can be consummated in only one state. 459 Mich 403, 411; 590 NW2d 293 (1999), citing Oklahoma Tax Comm v Jefferson Lines, Inc, 514 US 175, 186-87; 115 S Ct 1331; 131 L Ed 2d 261 (1995).

 This avenue to the exemption in MCL 205.94(l)(a) was conceded by the department at oral argument, and it is consistent with the text of the UTA and GSTA. Admittedly, such affidavit would come at the grace of the retailer.

 Combustion Engineering v Dep’t of Treasury, 216 Mich App 465; 549 NW2d 364 (1996).

 Id.

 Elias Bros, 452 Mich at 150. “Exemption from taxation effects the unequal removal of the burden generally placed on all [taxpayers] to share in the support of.. . government.” Michigan Baptist Homes & Dev Co v City of Ann Arbor, 396 Mich 660, 669-70; 242 NW2d 749 (1976). For that reason, “exemption is the antithesis of tax equality,” id,., which justifies placing the burden of showing entitlement to an exemption on the taxpayer.

 Robertson v DaimlerChrysler Corp, 465 Mich 732, 748; 641 NW2d 567 (2002).

 Andrie also argues that the department’s assessments of use tax were unconstitutional, citing Lockwood v Nims, 357 Mich 517; 98 NW2d 753 (1959), which rightly held that a former version of the UTA ran afoul of a constitutional ceiling on sales tax. When Lockwood was before this Court, the Michigan Constitution then stated that “at no time shall the legislature levy a sales tax of more than 3%.” Const 1908, art 10, § 23. Meanwhile, the Legislature enacted a use tax that purported to be levied upon the user; however, via a complicated statutory scheme, the use tax was necessarily *173 collected by the retail seller at the point of sale. See 1937 PA 94, as amended by 1959 PA 263, § 5. Effectively, consumers were paying 1% more than the sales tax ceiling. This Court held that use tax structure to be an impermissible end run around the constitutional sales tax ceiling, and it invalidated that use tax statute. Lockwood does not hold that any use tax necessarily conflicts with a constitutional ceiling on sales tax. Rather, it holds that what is for all intents and purposes a sales tax may not circumvent a sales tax ceiling simply by wearing a “use tax” nametag.
Today, responsibility for payment of sales and use taxes is separated, falling upon the retail seller and the user, respectively. Further, if payment of sales tax is proved, MCL 205.94(l)(a) prevents taxation under the use tax, whereas the statute overturned in Lockwood required payment of use tax without exception. Finally, while today’s Constitution still establishes a ceiling on sales tax percentages, the very same section discusses limitations on the use tax, foreclosing any claim that use and sales taxes cannot coexist. See Const 1963, art 9, § 8.

 For instance, the department enforced MCL 205.73(1) in a 1970 Letter Ruling, admonishing a retail seller for publishing a coupon stating *174 that “no sales tax” would he levied on the sale of cigarettes. Therein, the department stated, “It is quite true that you may not charge sales tax on cigarettes, however, the sale of cigarettes must be included in your [taxable] gross proceeds.” Letter Ruling 70-2 (May 22, 1970) (emphasis added), withdrawn by Revenue Admin Bull 2000-6. At that time, the GSTA applied to the retail sale of cigarettes.

 Retail sellers could remit their sales taxes from, e.g., past years’ reserves, liquidated assets, assets legally transferred from parent or subsidiary corporations, loans, etc. Further, as sometimes happens, a retailer may understate its sales tax liability or fail to remit the sales tax at all, in violation of its legal obligations under the GSTA.

 Swain Lumber Co v Newman Dev Co, 314 Mich 437, 441; 22 NW2d 891 (1946). That statute, as set forth in 1933 PA 167, § 23, stated:
No person engaged in the business of tangible personal property at retail shall advertise or hold out to the public in any manner, directly or indirectly, that the tax herein imposed is not considered as an element in the price to the consumer. Nothing contained in this act shall be deemed to prohibit any taxpayer from reimbursing himself by adding to his sale price any tax levied hereunder.

 Swain Lumber, 314 Mich at 441 (emphasis added).

 In fact, the Michigan Tax Tribunal has rejected the interpretation of Swain Lumber offered by Andrie. In Kruszka v Dep’t of Treasury, 4 MTT *176 520, 526-527 (Docket No. 88327), issued November 13, 1986, the taxpayer-purchasers claimed that a retail seller’s mere obligation to remit sales tax absolved them of their use tax liability. The tribunal held that, while Swain Lumber and MCL 205.73(1) purport to address a seller’s sales tax liability in a given situation, they do not offer guidance relative to a purchasers’ use tax liability.

 Quoting Combustion Engineering v Dep’t of Treasury, 216 Mich App 465, 469; 549 NW2d 364 (1996). The thrust of this argument is that, if the dissent is correct and consumer-taxpayers cannot pay the tax to the retailer themselves and thus be certain that they are entitled to the use tax exemption, the exemption is virtually unavailable to the consumer.

 Adams Outdoor Advertising v East Lansing, 463 Mich 17, 27 n 7; 614 NW2d 634 (2000) (“People are presumed to know the law.”).

 See generally MCL 205.68; MCL 205.104a.

 Elias Bros, 452 Mich at 150.