# STATE OF MICHIGAN

# COURT OF APPEALS

MIDWEST POWER LINE, INC.,

Petitioner-Appellant,

v

DEPARTMENT OF TREASURY,

Respondent-Appellee.

FOR PUBLICATION
May 22, 2018
9:15 a.m.

No. 336451
Tax Tribunal
LC No. 15-005680-TT

Before: SAWYER, P.J., and BORRELLO and SERVITTO, JJ.

SAWYER, P.J.

At issue in this case is whether MCL 205.94k(4) entitled petitioner to a use-tax exemption where it carries customers' property across state lines incidental to petitioner's business of providing repair services. We conclude that it does not.

Petitioner provides repair and maintenance services to electrical utilities, specializing in emergency restoration services. While based in Battle Creek, it provides services in a number of other states. For example, if a storm knocks out power, petitioner may be dispatched to another state to assist in power restoration. Its trucks leave its facility in Battle Creek empty, stop at the customer's storage yard and pick up the necessary supplies, such as power poles and transformers, and then proceed to the repair site. When finished, the trucks return to Battle Creek empty. It is undisputed that petitioner would be subject to the Michigan Use Tax unless it qualifies for the rolling stock exemption under MCL 205.94k(4). The tax tribunal rejected petitioner's claim for the exemption because it determined that petitioner is not an "interstate fleet motor carrier." We agree.

MCL 205.94k(4) provides as follows:

> For taxes levied after December 31, 1992, the tax levied under this act does not apply to the storage, use, or consumption of rolling stock used in interstate commerce and purchased, rented, or leased by an interstate fleet motor carrier. A refund for taxes paid before January 1, 1997 shall not be paid under this subsection if the refund claim is made after June 30, 1997.

MCL 205.94k(6) defines the terms in the statute relevant to this appeal:

-1-

(d) "Interstate fleet motor carrier" means a person engaged in the business of carrying persons or property, other than themselves, their employees, or their own property, for hire across state lines, whose fleet mileage was driven at least 10% outside of this state in the immediately preceding tax year.

\* \* \*

(g) "Qualified truck" means a commercial motor vehicle power unit that has 2 axles and a gross vehicle weight rating in excess of 10,000 pounds or a commercial motor vehicle power unit that has 3 or more axles.

\* \* \*

(i) "Rolling stock" means a qualified truck, a trailer designed to be drawn behind a qualified truck, and parts or other tangible personal property affixed to or to be affixed to and directly used in the operation of either a qualified truck or a trailer designed to be drawn behind a qualified truck.

Our review of decisions of the tribunal is limited.[1] Absent fraud, we review the decision for an the adoption of a wrong principle or an error of law.[2] Furthermore, we review questions of statutory construction de novo.[3] Moreover, the taxpayer bears the burden of establishing its entitlement to the exemption.[4]

MCL 205.94k(6)(d) defines "interstate fleet motor carrier" as "a person engaged in *the* business of carrying persons or property . . . for hire across state lines . . . ." (Emphasis added.) The definite article "the" has a specifying or particularizing effect.[5] A good illustration of this is the Supreme Court's discussion in *Robinson v City of Detroit*,[6] regarding the meaning of "the proximate cause" versus "a proximate cause": "The Legislature's use of the definite article 'the' clearly evinces an intent to focus on one cause. The phrase 'the proximate cause' is best understood as meaning the one most immediate, efficient, and direct cause preceding an injury."

This leads us to conclude that the Legislature's use of "the" in the phrase "the business of carrying persons or property . . . for hire across state lines" indicates the intent to focus not on what activities a business might include, but on the primary purpose of the business. That is, to qualify as an "interstate fleet motor carrier" the primary purpose of the business must be to

---

[1] *Drew v Cass Co*, 299 Mich App 495, 498; 830 NW2d 832 (2013).

[2] *Id.* at 498-499.

[3] *Id.* at 499.

[4] *Andrie, Inc v Dep't of Treasury*, 496 Mich 161, 171; 853 NW2d 310 (2014).

[5] *Robinson v City of Lansing*, 486 Mich 1, 14; 782 NW2d 171 (2010).

[6] 462 Mich 439, 458-459; 613 NW2d 307 (2000).

transport persons or property for hire across state lines. It is insufficient that their business activities might incidentally include such actions.

In this case, petitioner is not hired by the utility companies to transport power-line supplies across state lines. Rather, it is hired to repair storm damage to power lines and restore power to the affected areas. The fact that petitioner picks up those supplies from the customers' supply depots and transport them to the job site is merely incidental to its primary task of repairing the power systems. The fact that petitioner haul's customers' property across state lines is not, by itself, sufficient to establish that it is an "interstate fleet motor carrier."

In conclusion, we conclude that an "interstate fleet motor carrier" is a business that is particularly engaged in providing transportation for hire. In this case, that is not petitioner's particular business. Accordingly, the tax tribunal did not err in determining that petitioner was not entitled to the rolling-stock exemption to the use tax.

Affirmed. Respondent may tax costs.

/s/ David H. Sawyer
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto