*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CAPITAL ONE, N.A.,

        Plaintiff-Appellant,

v

STATE TREASURER, STATE OF MICHIGAN, and DEPARTMENT OF TREASURY,

        Defendants-Appellees.

UNPUBLISHED
February 11, 2020

No. 347125
Court of Claims
LC No. 17-000282-MT

Before: FORT HOOD, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Plaintiff, Capital One, N.A., appeals as of right the opinion and order of the Court of Claims granting summary disposition in favor of defendants, the State Treasurer (the Treasurer), the Department of Treasury (the Department), and the State of Michigan (the State). Plaintiff primarily contends that the Court of Claims erred in determining that plaintiff failed to provide sufficient documentation to the Department to establish that it was entitled to a tax refund. We disagree and affirm.

## I. FACTUAL BACKGROUND

This matter arises out of a tax refund requested by plaintiff. Plaintiff is in the business of financing retail transactions through private label credit cards (PLCCs).[1] Plaintiff contracts with merchants located in Michigan and elsewhere to provide the PLCCs to their customers, and at the point of sale, the PLCC account finances both the purchase and the related sales tax. According to plaintiff, the merchants are then responsible for remitting the sales tax to the State. Where the sales tax has been remitted to the state and customers fail to make their payments to plaintiff such

---

[1] Pursuant to statute, a " '[p]rivate label credit card' means any charge card, credit card, or other instrument serving a similar purpose that carries, refers to, or is branded with the name or logo of a vendor and that can only be used for purchases from the vendor." MCL 205.54i(d).

that the debt owned by plaintiff is deemed worthless and subsequently charged off by plaintiff,[2] MCL 205.54i provides an avenue for companies like plaintiff to seek a refund from the Department for the taxes they financed.

Plaintiff sought such a refund from the Department in October 2015, and the Department responded with a letter requesting documentation from plaintiff to, among other things, "substantiate the amount of refund requested." Plaintiff submitted, among some other things, spreadsheets produced internally by plaintiff that purported to show how plaintiff calculated the requested refund, as well as 48 sample accounts. In July 2017, the Department informed plaintiff via letter that it had determined $90,722.29 of the requested $384,157.19 would be refunded, and the remaining $292,434.40 would be denied.[3] Plaintiff filed a complaint in the Court of Claims alleging that the Department wrongfully denied the remaining funds under the General Sales Tax Act, MCL 205.78 *et seq*. (the GSTA).

Plaintiff ultimately filed a motion for summary disposition pursuant to MCR 2.116(C)(10), contending, primarily as a result of the issuance of *Ally Financial, Inc v State Treasurer*, 502 Mich 484; 918 NW2d 662 (2018), that no genuine issues of material fact existed and that plaintiff was entitled to judgment as a matter of law. The Treasurer and the Department filed their own joint motion for summary disposition pursuant to MCR 2.116(C)(10), contending that they were entitled to dismissal of plaintiff's complaint because plaintiff failed to establish with evidence that Michigan sales tax had ever actually been paid, and thus plaintiff failed to establish that it was entitled to a refund whatsoever. The Treasurer and the Department relied heavily on *Capital One, NA v State Treasurer*, unpublished per curiam opinion of the Court of Appeals, issued August 14, 2018 (Docket No. 340635).[4] The State also filed an unopposed motion for summary disposition under MCR 2.116(C)(8), arguing that it was entitled to dismissal from the case because plaintiff failed to articulate any meaningful allegations against it. The Court of Claims agreed with each of the defendants and ultimately granted their motions and denied plaintiff's motion.

With respect to the Treasurer and the Department, the court rested its decision on the issue of whether plaintiff had provided sufficient evidence of taxes paid, and whether the Department had a rational basis to require additional evidence. The court noted that the evidence provided by plaintiff merely assumed that sales tax had been paid, but failed entirely to establish that it actually had. The court also noted a number of discrepancies in the evidence, including that the sampled account summaries provided to the court showed a number of out-of-state purchases, and there

---

[2] "To 'charge off' means that 'the creditor has given up on trying to collect an unpaid debt' and has notified the credit bureaus to add this negative mark on the customer's credit report." *Capital One, NA v State Treasurer*, unpublished per curiam opinion of the Court of Appeals, issued August 14, 2018 (Docket No. 340635), p 2.

[3] Plaintiff originally sought $419,292.19 before reducing its request to $384,157.19. Plaintiff then made admissions to the Court of Claims that led plaintiff to reducing what it now requests on appeal, $169,131.52.

[4] Unpublished opinions of this Court are not binding on future panels pursuant to MCR 7.215(C)(1).

was "no evidence in the record reconciling the[] out-of-state purchases with [the] request for a refund of Michigan sales tax." We agree with the Court of Claims.

## II. STANDARD OF REVIEW

"The trial court's ruling on a motion for summary disposition is reviewed de novo on appeal." *ZCD Transp, Inc v State Farm Mut Auto Ins Co*, 299 Mich App 336, 339; 830 NW2d 428 (2012), citing *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). Summary disposition pursuant to MCR 2.116(C)(10) is appropriate where, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). A motion pursuant to MCR 2.116(C)(10) considers documentary evidence and "tests the *factual* sufficiency of the complaint." *Dalley v Dykema Gossett*, 287 Mich App 296, 304 n 3; 788 NW2d 679 (2010), citing *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). In reviewing the motion, "this Court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, in a light most favorable to the party opposing the motion." *Sanders v Perfecting Church*, 303 Mich App 1, 4; 840 NW2d 401 (2013) (quotation marks and citation omitted). "[R]eview is limited to the evidence that has been presented to the [trial] court at the time the motion was decided." *Innovative Adult Foster Care*, *Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009).

Questions of statutory interpretation are also reviewed de novo. *Ally Financial*, 502 Mich at 491. Additionally, our Supreme Court has "historically held that tax exemptions and deductions must be construed narrowly in favor of the government," although that requirement "does not permit a strained construction that is contrary to the Legislature's intent." *Id*. at 491-492 (quotation marks and citations omitted). The claimant of a tax exemption bears the burden of proving their entitlement, which includes the burden of establishing in this case that the taxes for which plaintiff seeks a refund were actually paid. *Podmarjersky v Dep't of Treasury*, 302 Mich App 153, 164-165 (2013); *Andrie Inc v Treasury Dept*, 496 Mich 161, 176; 853 NW2d 310 (2014). The evidentiary burden on the plaintiff does not dissipate simply because, as in this case, a third party was legally obligated to pay the tax at issue; plaintiff must still establish with evidence that the taxes for which it seeks a refund were actually paid. *Andrie*, 496 Mich at 175-177.

## III. ANALYSIS

As a preliminary matter, we note that plaintiff has failed to respond whatsoever to the State's contention that plaintiff failed to state a claim against it under MCR 2.116(C)(8). Moreover, we see no error with the Court of Claims's conclusion that plaintiff did, in fact, fail to make any meaningful allegations against the State in its complaint. Accordingly, it was proper to grant the State's motion and dismiss plaintiff's complaint with respect to the State as a defendant. With respect to the Treasurer and the Department, the primary issue in this case is whether plaintiff provided to the Department the requisite documentation in support of its tax refund claim, or relatedly, whether the Department had a rational basis to require additional documentation. Ultimately, we agree with the Court of Claims.

As recently noted by our Supreme Court, "MCL 205.54i permits retailers and lenders to seek a refund for sales taxes paid on a 'bad debt,' as defined by the statute." *Ally Financial*, 502

Mich at 492. The bad-debt statute allows either lenders or merchants to seek a tax refund related to bad debt, and where a lender "seek[s] the tax refund, they must provide a written election form, specifying that they, rather than the taxpayer, may claim the refund." *Id*., citing MCL 205.54i(3). The claimant must establish that "no deduction or refund was previously claimed or allowed on any portion of the account receivable," and that "[t]he account receivable [was] found worthless and written off by the . . . lender on or after September 30, 2009." MCL 205.54i(3)(a) and (b). Importantly, "[a]ny claim for a bad debt deduction under this section shall be supported by the evidence required by the department." MCL 205.54i(4). Because the Department has been granted discretion by the Legislature "to determine the evidence required to support a party's claim for a deduction or refund," the Department's "exercise of that discretion will be upheld if supported by a rational basis." *Ally Financial*, 502 Mich at 504.

It should principally be noted that the central point of plaintiff's argument on appeal is that defendants have been disingenuous, and that the Court of Claims based its decision on an issue that was not, in fact, an issue prior to this litigation. Plaintiff principally suggests that defendants' argument is disingenuous because the Department originally partially denied plaintiff's tax refund for reasons that have since been deemed invalid by our Supreme Court.

Indeed, in *Ally Financial*, our Supreme Court held that the effect of a repossession on a claimed tax refund for bad debt only reduces the bad debt by the value of the repossessed property, and does not necessarily extinguish "the entire value of the account before the property was repossessed" for tax purposes. *Ally Financial*, 502 Mich at 501-503. However, it is not clear that the Department understood repossession to have any different effect when the Department partially denied plaintiff's request. In its first letter to plaintiff, the Department noted: "Lastly, at MCL 205.54i, Sec. 4i (1)(a): '*A bad debt shall not include . . . repossessed property.*' Therefore, any refund amount to be considered needs to be adjusted to subtract repossessed property." Then, in the letter of partial denial the Department sent to plaintiff, the Department merely noted: "Sales in which you have indicated were [sic] repossessed have been removed from refund calculations along with invalid election statements." Based on the evidence available from the lower court record, it is not clear that the Department took a position contrary to *Ally Financial*.

Plaintiff also notes that *Ally Financial* dealt with interpretation of language contained in the election forms from that case that were executed pursuant to the bad-debt statute, and in holding that the phrase "[a]ccounts currently existing or created in the future" included accounts that had already been charged off for tax purposes, our Supreme Court implicitly held that election forms need not be executed prior to an account being charged off for the form to be valid. *Ally Financial*, 502 Mich at 506-508.[5] Contrary to that idea, the Department in this case noted in its letter of denial to plaintiff that the written election forms "must be executed before the bad debt is incurred." Thus, to the extent that the Department relied on this erroneous understanding of the election forms in partially denying plaintiff's tax refund, we would agree that the Department erred. However, the extent to which the Department relied on its erroneous understanding of the law cannot be

---

[5] We affirmed this principle in a subsequently issued unpublished opinion where we noted that *Ally Financial* "determined that belatedly executed election forms are sufficient under the statute." *Capital One*, unpub op at 3.

known because, as detailed below, plaintiff provided insufficient evidence that it was entitled to a refund in the first place. And furthermore, our review is of the Court of Claims decision, which was not based on either the effect of repossession on bad debt or election forms.

This leads to the principal point plaintiff relies upon in contending that defendants' arguments are disingenuous. Plaintiff contends that, if it is now defendants' argument that plaintiff failed to provide sufficient evidence that taxes were paid and that plaintiff was entitled to a refund, it does not stand to reason that defendants chose to partially grant plaintiff's refund in the amount of $90,722.79. However, it is not the role of this Court to question why the Department chose to refund plaintiff that amount, or even to question the evidence it used in calculating such a refund. Perhaps the Department relied on the tax returns plaintiff claims on appeal are already in the Department's possession; perhaps not. Either way, the question properly before this Court is whether the Department had a rational basis to determine that the evidence presented by plaintiff was insufficient to support the amount of refund plaintiff sought both in its original claim and later in the Court of Claims. See *id.* It was and is plaintiff's obligation to prove every element of its tax refund claim, and we agree with defendants that plaintiff's emphasis on the fact that it received a tax refund at all as evidence that it should have received a substantially larger refund reads as a veiled attempt at either circumventing its statutory obligations or shifting the burden of proof. See *Podmarjersky*, 302 Mich App 153. Thus, to the extent that plaintiff's argument is premised on the idea that defendants have somehow failed to aid plaintiff in establishing its case, the argument is without merit.

With all of that in mind, the crux of this case is plaintiff's evidentiary burden, and we agree with the conclusion of the Court of Claims that the Department reasonably exercised its discretion in determining that plaintiff's evidence was insufficient, particularly given the documentation actually provided by plaintiff to the lower court. In response to plaintiff's request for an exemption, the Department instructed plaintiff to send evidence of the following:

> Documentation is needed to substantiate how you arrived at the amount of your request such as an itemized breakdown of all accounts (default customers) in which a refund has been requested *along with documentation to substantiate the amount of refund requested*.
>
> * * *
>
> Documentation (e.g. IRS form 1120 IRS) is needed to substantiate the account receivable has been found worthless and has been written off for the above years in question.
>
> * * *
>
> Evidence that the tax was paid on the original taxable transaction is needed. To substantiate this we will allow a sampling of customer account statements. *The credit card statements should detail all items purchased during the period.*

Plaintiff contends that it provided everything the Department requested, and that the Department has arbitrarily and capriciously exercised its discretion by requiring evidence in addition to what plaintiff provided without explaining exactly what that evidence is or requesting it from plaintiff

in more specific terms. As noted above, however, it has always been plaintiff's burden to prove that it was entitled to a tax refund, and moreover, the Department outlined exactly what it needed from plaintiff in the language above.

Plaintiff provided no evidence that sales tax was ever actually paid or remitted in this case and no documents to substantiate the amount of refund requested. Plaintiff further failed to provide documentation detailing the items purchased or their price, which plaintiff must understand to be relevant information considering the deposition testimony of its employee that "some items are exempt from sales tax."[6] Instead, plaintiff provided spreadsheets, which plaintiff admits were prepared by its attorneys using information collected from plaintiff's electronic record keeping system, that do not establish that sales tax was paid or remitted. The spreadsheets rely on plaintiff's "taxable percentage" method to determine an estimated amount of sales tax paid.

"Taxable percentage," according to plaintiff, is a number calculated by the merchant by taking the total value of sales subject to sales tax in Michigan and dividing it by the merchant's gross sales, which creates a percentage utilized to estimate the amount of the merchant's sales that are taxable. According to plaintiff, it utilizes the taxable percentage to obtain an estimation of the sales tax that should have been paid in relation to its charged-off accounts. Indeed, in the unpublished opinion cited by defendants, this Court noted that, in that case, plaintiff described the "taxable percentage" as "an *estimate* of sales tax paid, calculated by reviewing all items purchased on an account and factoring out a proportion of the purchases to account for nontaxable sales." *Capital One*, unpub op at 5 n 3 (emphasis added).[7] The Court of Claims reached the correct conclusion when it determined that the Department had a rational basis to conclude that plaintiff's method of showing that the taxes for which plaintiff sought a refund were *actually* paid was insufficient. The spreadsheets provided by plaintiff show the amount of bad debt plaintiff purports to have acquired and the amount of taxes plaintiff *estimates* merchants *might have* paid in relation to that debt, and thus, as the Court of Claims concluded, plaintiff's tax claim fundamentally relied on a *presumption* that taxes had been paid.

This Court has held before that plaintiffs in similar circumstances are entitled to no such presumption. In *Andrie*, the plaintiff sought to avoid paying a use tax on his personal property by establishing that he instead paid a sales tax to the retailers from which he purchased the property. *Andrie*, 496 Mich at 164-165.[8] As in this case, the plaintiff bore the burden of establishing his entitlement to the exemption, and by extension, bore the burden of establishing that the sales tax

---

[6] The only account statements provided in the lower court record were provided by defendant, and as explained further below, the vast majority of purchases contained in the statements appear to have been made outside of Michigan.

[7] Our holding in the previous case suggests that the panel was of the belief that the Department had a rational basis to request documentation that would establish "*actual* sales tax paid," and that the Department reasonably exercised its discretion in concluding that the taxable percentage calculation was insufficient to that end. *Capital One*, unpub op at 5.

[8] Consumers are entitled to an exemption from Michigan's use tax if they can show that sales tax was already paid. MCL 205.95(1)(a).

had actually been paid. *Id*. at 165. For some purchases, the plaintiff established that tax had been paid by providing invoices of the purchases that listed the sales tax as a separate line item. *Id*. at 166.[9] For other pieces of property for which the plaintiff could not provide similar invoices, the plaintiff attempted to rely on a GSTA requirement that "sales tax be included in the price of the goods purchased" to establish that sales tax were, in fact, paid. *Id*. at 167. Our Supreme Court made clear that no such presumption exists. *Id*. at 167, 171-176. "Although a retail seller has a legal obligation to remit sales tax even if it does not affirmatively shift the tax burden to the purchaser, this does not mean that the tax necessarily was paid by the seller . . ." *Id*. at 176. The Court noted:

> [O]ne can see that the consumer remains fully equipped to obtain the documentation necessary to later claim the exemption. With knowledge of its burden in mind, at the point of sale the consumer can bargain for a receipt that shows the inclusion of sales tax in the purchase price. Alternatively, it may request an affidavit from the retail seller averring that sales tax was included in the sale price or remitted to the department. In either instance, the consumer shows that the sales tax was paid. It is that simple. [*Id*. at 177 (footnote omitted).]

The same should apply to lenders seeking a refund under MCL 205.54i.

We note that *Ally Financial* supports a conclusion that plaintiff failed to provide sufficient evidence to support the amount of refund it sought. In that case, the plaintiffs were also financing companies seeking "tax refunds under Michigan's bad-debt statute, MCL 205.54i." *Ally Financial*, 502 Mich at 488. In *Ally Financial*, plaintiffs sought refunds for bad debts associated with vehicle purchases they had financed. *Id*. Among some other things, the Department denied the plaintiffs' requests because they failed to provide RD-108 forms as evidence that taxes were, in fact, paid. *Id*. "The RD-108 is an application for vehicle title and registration" that "the Secretary of State will only issue . . . once sales tax is paid." *Id*. at 503-504. The plaintiffs, similarly to this case, argued "that the Department acted arbitrarily and capriciously by not accepting plaintiffs' alternative documentation—*plaintiffs' own spreadsheets tracking the amount of tax paid on each vehicle*." *Id*. at 503 (emphasis added). The Court disagreed, and noted that

---

[9] Notably, in *Andrie*, the plaintiff was not required to establish that the merchant actually remitted the tax to the Department, and instead, was only required to prove "that [the plaintiff] paid sales tax to the retail seller." *Andrie*, 496 Mich at 170, citing *Combustion Engineering v Dep't of Treasury*, 216 Mich App 465; 549 NW2d 364 (1996). In *Combustion Engineering*, this Court held that a plain reading of the tax exemption statute at issue in that case only required consumers to establish that they had paid sales tax on their retail purchases to the retailers. *Combustion Engineering*, 216 Mich App at 467-468, construing MCL 205.94(1)(a). Plaintiff has made no such argument about MCL 205.54i, and even still, just as plaintiff's spreadsheets do not show the amount of sales tax remitted by merchants if any at all, they do not show an amount of sales tax actually financed if any at all. Similarly, where the sample account histories provided in the lower record sometimes show an amount of sales tax paid on a purchase, it is notable that, again, most of the purchases on those documents appear to have occurred outside of Michigan.

the Department had a rational basis to require the RD-108 forms because "[e]xcept for the accounts for which [t]he plaintiffs produced the RD-108 forms, plaintiffs have provided no evidence that sales taxes were actually paid. Plaintiffs provided their own internal records accounting for the payments, but these records do not show that the taxes were actually remitted." *Id.*[10]

In summation, where the only piece of evidence purporting to show how plaintiff arrived at the amount of refund it claimed it was entitled to—the account-level spreadsheets—show neither the actual value of sales taxes paid, or indeed, that sales taxes were paid at all, the Department reasonably exercised its discretion in requiring documentation that would "substantiate the amount of refund requested."[11] It is also undisputed that plaintiff's evidence, including the 48 sampled account statements, did not detail the items purchased in relation to the total amount of bad debt on the corresponding spreadsheets, which, particularly given the admission of plaintiff's employee that some items are not subject to sales tax, was a reasonable request on the part of the Department.[12]

---

[10] Plaintiff briefly asserts that *Ally Financial* is distinguishable because, in that case, the Court noted that plaintiff could fairly easily acquire the RD-108 forms that were necessary to establish that taxes had been paid, whereas in this case, RD-108 forms would not have been produced for the majority of the accounts at issue, and the task of providing point-of-sale or other information would be too onerous on plaintiff. At the same time, plaintiff notes in its brief on appeal that it could acquire, and "always has been willing to provide," tax returns from its merchants that would show the sales tax remitted by those merchants. Plaintiff suggests that it did not provide such documentation because the Department did not specifically request it, but as noted throughout, plaintiff has the burden of establishing its claim with evidence.

[11] Plaintiff reports in its brief that "[m]ost taxing authorities accept 'taxable percentage' data to factor in non-taxable sales," including the "states of California, Texas and Pennsylvania." Be that as it may, our Legislature granted the Department discretion to determine the evidence required to support a party's claim for a deduction or refund," and this Court will uphold the Department's use of its discretion where it is supported by a rational basis. *Ally Financial*, 502 Mich at 504.

[12] Similar to this case, in *Capital One*, we noted:

> Defendants requested Capital One to provide "a sampling of customer account statements" that "should detail all items purchased during the period." Instead, Capital One provided spreadsheets showing full account histories for a sample of 50 accounts and a spreadsheet with basic information about all accounts. [*Capital One*, unpub op at 5.]

In that case, we noted that Capital One "readily admit[ted] that the[] documents did not detail all items purchased as directed." *Id.* Plaintiff contends in its brief on appeal that the present case is distinguishable because the Department implicitly deemed plaintiff's evidence satisfactory when it granted a partial tax refund, but plaintiff has ignored the fact that a partial refund was provided in the previous case as well. *Id.* at 3. Moreover, as noted above, it is plaintiff's and not the Department's burden to prove that plaintiff is entitled to the exemption it requests.

Plaintiff contends in the alternative that, at the very least, it is entitled to a refund for the two accounts associated with its refund request in which an RD-108 form was both required and provided, and it is entitled to a refund for Saks Fifth Avenue accounts for which it provided account statements that detailed the "specific items purchased and separately stated sales tax." Indeed, plaintiff attached to its motion for summary disposition RD-108 forms evidencing a total of $1067.32 in taxes paid. The corresponding spreadsheet indicates that, following repossessions and some other recovering on the accounts, plaintiff seeks a refund of $229.88. One of the accounts, with an account number ending with 4824, has a purchase amount on the corresponding spreadsheet that correlates with the initial account balance on the RD-108 form, substantiating that the $70.61 of $545.32 in taxes paid on the account was, at the very least, likely paid to the Department. The other account shows a balance on the account substantially higher than the purchase price from the RD-108 form, and plaintiff provided no evidence that Michigan taxes were paid on the additional purchases from the account. Thus, it cannot be known whether the refund amount listed on plaintiff's spreadsheet accurately corresponds to the Michigan taxes paid on the account.

With respect to the Saks Fifth Avenue accounts, defendants provided to the Court of Claims evidence that $1.08 of sales tax may have been paid in 2011 on a purchase made in Troy, Michigan. The rest of the account statements provided by defendant seem to show purchases that were made in San Antonio, Texas, and San Diego, California. Plaintiff does not cite to defendant's attachments, and also failed to provide any additional account statements to the Court of Claims. On appeal, plaintiff cites to its spreadsheets, which again, rely on plaintiff's taxable percentage method to estimate the taxes that may have been paid and do not show the actual purchases made or the actual corresponding sales tax.

Based on the evidence that was available to the Court of Claims, plaintiff has not established that it was entitled to a tax refund, or that defendants lacked a rational basis to require additional evidence in support of plaintiff's claim. Even to the extent that plaintiff did establish entitlement to a refund through two RD-108 forms and Saks Fifth Avenue sample accounts— totaling $4,272.91 according to plaintiff's brief on appeal—plaintiff was ultimately provided a refund of over $90,000. Plaintiff has failed to show that it was entitled to the amount of refund it requested, and failed to establish any genuine issues of material fact to show that the Department improperly exercised its discretion in requiring additional documentation from plaintiff to verify the amount of refund plaintiff requested.

Lastly, it is worth noting that, even assuming arguendo that plaintiff had provided sufficient evidence in this case that taxes were paid, plaintiff has admitted that the majority of accounts comprising its refund request have been sold off to third-party debt collectors, and we agree with the Court of Claims that such accounts are excluded from the definition of bad debt.

Plaintiff contends that, to the extent that the accounts were sold, plaintiff is still entitled to recovery because, as with repossession, *Ally Financial*, 502 Mich 497-503, the value of the sale simply offsets the amount of debt associated with the account. Contrarily, defendants contend, and the Court of Claims agreed, that accounts sold to third-party debt collectors do not meet the bad-debt statute's definition of "bad debt," and thus, unlike the off-setting process with repossessed property described above, the sale of an account to a third party excludes the entirety

of the account from eligibility for a bad-debt tax refund irrespective of the amount for which the account was sold.  Again, we agree with the Court of Claims.

As the Court of Claims noted, MCL 205.54i(1)(a) explicitly excludes "any accounts receivable that have been sold to and remain in the possession of a third party for collection" from the definition of "bad debt."  *Ally Financial* further explicitly notes that, when a lender sells an account receivable to a third-party debt collector, it is presumed that the lender "in exchange receives what it considers to be the fair value of the accounts from the purchase of the accounts." *Ally Financial*, 502 Mich at 498.  Thus, unlike with repossessed property, which only offsets the amount of bad debt in an account, sale of an account to a third party indicates that "the taxpayer has received the equivalent of full consideration in connection with the sale," and the entirety of that account is then excluded from the definition of "bad debt."  *Id*.  In other words, even were this Court to disagree about the sufficiency of the evidence provided by plaintiff in support of its refund claim, it is inarguable that the majority of the claim is comprised of accounts that do not meet the definition of bad debt.

Affirmed.


/s/ Karen M. Fort Hood
/s/ Jane M. Beckering
/s/ Mark T. Boonstra

-10-