*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RCS RECOVERY SERVICES, LLC,

        Plaintiff-Appellant,

v

W. EMERY MATTHEWS, also known as EMERY
MATTHEWS, EMERY W. MATTHEWS,
WILLIAM EMERY MATTHEWS, WILLIE
MATTHEWS, WILLIE E. MATTHEWS, and
WILLIE EMERY MATTHEWS,

        Defendant-Appellee.

UNPUBLISHED
April 22, 2021

No. 351806
Wayne Circuit Court
LC No. 19-001859-CK

Before: GLEICHER, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

When a plaintiff has a cause of action against a defendant, it must bring that action within the time limits provided by the Legislature in statute. When a debtor fails to make payments on a promissory note, the creditor has six years to file suit. RCS Recovery Services waited nearly 10 years to file a collection action against W. Emery Matthews. While the trial court summarily dismissed RCS's action based on promissory estoppel grounds, we affirm the result based on the statute of limitations.

## I. BACKGROUND

On July 1, 2000, Matthews purchased a home with a loan secured by a first mortgage on the property. In 2003, Matthews took out another loan, secured by a second mortgage on his property. The loan secured by the second mortgage has changed hands several times and RCS Recovery Services, LLC is the current successor-in-interest. Matthews moved following a murder in the neighborhood. He was unable to sell the property and defaulted on both the first and second mortgage loans in 2009. On September 21, 2011, the holder of the first mortgage foreclosed on the property by advertisement, and the sheriff's deed was recorded on October 3, 2011. Neither of the lenders, nor Matthews, redeemed the property during the redemption period.

-1-

On February 16, 2013, Ocwen Loan Servicing, LLC, took over servicing the second mortgage loan. Ocwen attempted to collect on the outstanding debt, which was then approximately $71,000. Matthews refused to make payments and threatened legal action against Ocwen if it made further collection efforts or tarnished his credit report in any way. Ocwen replied through an April 10, 2013 letter that the "loan was charged off while serviced by GMAC Mortgage, LLC (GMACM)"—Ocwen's predecessor in interest. The letter indicated that Ocwen's response was "based upon the available account records acquired from GMACM." The letter further stated:

> According to those records, the account was charged off on January 27, 2010[,] in the amount of $51,056.67 and was sold at foreclosure sale by the senior lien holder on September 21, 2011. This account has been reported as charged off to the credit report agencies.

> You may disregard the [February 16, 2013] letter received. If you have any further questions, you may discuss this account with our Recovery Department at 800-850-4622.

The bottom of the letter still included a statement that Ocwen "is a debt collector attempting to collect a debt and any information obtained will be used for that purpose." However, Matthews believed the letter meant he "no longer owed any money on the" Parkside property.

Ocwen continued to send letters to Matthews seeking payment on the loan throughout 2013 and in November 2013, Ocwen sent a letter indicating its willingness to assist Matthews through his financial hardship. Matthews ignored this correspondence. And Ocwen took no legal action to collect on the debt.

RCS took over servicing the second mortgage loan on May 11, 2015. RCS notified Matthews of this change, and Matthews ignored this correspondence as well. RCS then waited nearly 3½ years to file suit against Matthews for breach of the mortgage covenant to pay. RCS later amended its complaint to add a claim for breach of an installment contract.

The parties filed competing motions for summary disposition. Matthews asserted that the second mortgage was extinguished when the senior lien holder foreclosed on the property and the second mortgage holder failed to redeem the property. As the mortgage was extinguished, Matthews contended, RCS had only six years to file a claim for money damages arising from the contract breach, not the 10-year period that would have applied to a mortgage action. Matthews also contended that RCS was barred from recovery under the doctrines of promissory estoppel, laches, and waiver as its predecessor in interest stated its intent to forego payment.

RCS challenged Matthews' motion for dismissal on statute-of-limitations grounds, urging that the 10-year limitation period applied. RCS contended that it was undisputed that Matthews breached his promissory note by failing to repay his loan, entitling RCS to judgment as a matter of law. And RCS argued that (1) laches did not apply because Matthews was not prejudiced by any delay; (2) promissory estoppel did not apply because Ocwen's April 10, 2013 letter did not contain any promise to forgive the debt; and (3) the April 10 letter did not constitute a waiver because it did not contain an intentional abandonment of a known right.

The trial court granted summary disposition in Matthews' favor, stating that it "like[d] the promissory estoppel argument, somebody tells me I don't have to pay something back I'm going with that." RCS continued to argue that Matthews did not detrimentally rely on the April 10 letter. The trial court disagreed, noting that RCS's letter "said ignore the previous letter that you owe us money." RCS sought reconsideration of the court's order, but the court denied the motion. RCS now appeals.

## II. DISCUSSION

RCS is correct that Matthews was not entitled to summary disposition on promissory estoppel grounds. However, this Court may affirm a trial court's judgment when it has reached the right result but for the wrong reason. *Gleason v Mich Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003). And RCS's action was barred by the applicable statute of limitations.[1]

We review de novo a trial court's resolution of a motion for summary disposition. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). Summary disposition is warranted under MCR 2.116(C)(10) when the evidence, viewed in the light most favorable to the nonmoving party, fails to establish a genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

The elements of promissory estoppel are "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Klein v HP Pelzer Auto Sys, Inc*, 306 Mich App 67, 83; 854 NW2d 521 (2014) (quotation marks and citation omitted). "A promise is a manifestation of intention to act or refrain from acting in a specific way, so made as to justify a promisee in understanding that a commitment has been made." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 41; 761 NW2d 151 (2008) (quotation marks and citation omitted). "The promise must be definite and clear, and the reliance on it must be reasonable." *Id*.

The trial court erroneously concluded that Ocwen's April 10 letter contained a promise to forgo repayment of the second mortgage loan. The April 10 letter advised Matthews to "disregard" the February 16, 2013 letter, but it also clearly stated that Ocwen was "a debt collector attempting to collect a debt . . . ." The April 10 letter included a corrected balance due, reducing the debt cited in the February 16 letter by more than $20,000. The April 10 letter was intended to supplant the February 16 letter as a collection communication, not to disavow the right to collect all together. It did not constitute a promise or indicate the debt was forgiven.

Matthews asserts that because Ocwen "charged off" the loan, he was no longer liable for the debt. To "charge off" means "[t]o treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt." *Black's Law Dictionary* (11th ed 2019). A "bad debt" is "[a] debt that is uncollectible and that may be deductible for tax purposes." *Id*. Similarly, a "zombie debt" is defined as an "[o]ld debt that a creditor or collector has given up on collecting

---

[1] Given our resolution of this issue, we need not consider whether summary disposition would have been appropriate on laches and waiver grounds.

and sold to another party who undertakes fresh collection efforts." *Id*. And to "write off" is an accounting term, meaning "[t]o transfer the entire balance (of an asset account) to an expense or loss account to reflect the asset's total loss of value <the partnership wrote off the bad debt>." *Id*.

It appears on the record that a former loan servicer—GMAC Mortgage—charged off Matthews's account on January 27, 2010, in the amount of $51,056.67. That an account was "charged off" or "written off" does not mean the debt was forgiven or not still owed:

> A write-off is simply an internal recognition by a lender that an account is worthless after attempts at collection have failed. As the Supreme Court of Wisconsin has explained, "When a lending institution 'writes off' a 'bad debt,' it is merely indicating that the debt is uncollectible. That is, it is no longer an asset of the institution. A 'write off' does not mean that the institution has forgiven the debt or that the debt is not still owing."

> Our Legislature has recognized that the debt is still owing—and may be collected—after it is written off and has required taxpayers to repay the amount deducted as bad debt on such amounts. [*Ally Fin Inc v State Treasurer*, 502 Mich 484, 507-508; 918 NW2d 662 (2018) (citation omitted).]

"[W]ritten-off accounts still continue to be collectible and are only deemed worthless for tax computation and accounting purposes . . . ." *Id*. at 508. Accordingly, the trial court clearly erred in determining that the "charged off" account was a forgiven debt. Matthews is an attorney who either knew, should have known, or could have easily ascertained this legal principle. The element of reasonable reliance also could not be met in this case.

However, summary disposition in Matthews's favor was warranted as RCS filed its complaint long after the expiration of the statute of limitations. MCL 600.5807 provides the statute of limitations for various claims of breach of contract. MCL 600.5807(5) provides a 10-year statute of limitations "for an action founded on a covenant in a deed or mortgage of real estate." MCL 600.5807(5). Under MCL 600.5807(9), however, "[t]he period of limitations is 6 years for an action to recover damages or money due for breach of contract[.]"

A mortgage is not a debt; it is a lien on real property to secure a debt. *Stock Bldg Supply, LLC v Crosswinds Communities, Inc*, 317 Mich App 189, 207; 893 NW2d 165 (2016); *First of America Bank-Oakland Macomb, NA v Brown*, 158 Mich App 76, 81; 404 NW2d 706 (1987). "The foreclosure of a senior mortgage extinguishes the lien of a junior mortgagee where the junior mortgagee did not redeem at the foreclosure sale." *Advanta Nat'l Bank v McClarty*, 257 Mich App 113, 125; 667 NW2d 880 (2003). The right to enforce a mortgage is extinguished after a foreclosure and at the end of the redemption period. *Id*.; *Wilmington Savings Fund Society, FSB v Clare*, 323 Mich App 678, 686; 919 NW2d 420 (2018). The underlying debt is not extinguished just because the mortgage is; rather the debt and the accrual of interest lives on. *Brown*, 158 Mich App at 81. If the property is purchased at the foreclosure sale for less than the amount owed, the mortgage holder may proceed against the debtor for the deficiency. *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 522; 892 NW2d 467 (2016) (citation omitted). "The basis for such deficiency lawsuits is not the mortgage, . . . but the note[.]" *Wells Fargo Bank, NA v*

-4-

*Cherryland Mall Ltd Partnership*, 295 Mich App 99, 109; 812 NW2d 799 (2011), remanded on other grounds 493 Mich 859 (2012).

RCS's predecessor in interest did not bid on the subject property at the 2011 foreclosure sale instigated by the first mortgage holder. RCS's predecessor in interest received no funds from the sale of the subject property at foreclosure. When the property was sold, the second mortgage was extinguished. However, RCS's predecessor in interest retained its right to file suit against Matthews on the underlying note for the deficiency.

A lawsuit for a deficiency judgment on the promissory note must be brought within the six-year statute of limitations, not the 10-year statute of limitations that would have applied to an action to enforce the mortgage. *FDIC v Garbutt*, 142 Mich App 462, 468; 370 NW2d 387 (1985). "[T]he period of limitations runs from the time the claim accrues," and "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." MCL 600.5827. "For a breach of contract action, the limitations period generally begins to run on the date that the breach occurs." *Seyburn, Kahn, Ginn, Bess, Deitch & Serlin, PC v Bakshi*, 483 Mich 345, 355; 771 NW2d 411 (2009).

Matthews defaulted on the promissory note underlying the second mortgage in July 2009 when he missed his first payment. A timely lawsuit, therefore, should have been filed by July 2015. Even if the default did not occur until the end of the foreclosure redemption period, RCS's lawsuit would be too late. Such a suit should have been filed by October 2017. Instead, RCS took its interest in the property in 2015 and then waited until February 8, 2019 to take legal action to collect on the debt. This was simply too late and the trial court would have been justified in granting summary disposition to Matthews on the ground raised in his motion.

In affirming the grant of summary disposition, we recognize RCS's reliance on *Guardian Depositors Corp of Detroit v Hebb*, 290 Mich 427; 287 NW 796 (1939), *Guardian Depositors Corp of Detroit v Savage*, 287 Mich 193; 283 NW 26 (1938), and *Schram v Pillon*, 45 F Supp 942, 943 (ED Mich, 1942). In *Schram*, the United States District Court for the Eastern District of Michigan concluded that *Hebb* held "that although all liens created by the mortgage were extinguished at the mortgage sale, nevertheless the mortgagee had the right to pursue any deficiency remaining by a suit on the covenants in the mortgage." *Schram* also recognized *Hebb* as holding that the 10-year statute of limitations governing mortgage covenants applied instead of the six-year statute of limitations applicable to notes. *Id*. While lower federal court decisions may be persuasive, they are not binding on state courts. *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004). Moreover, unlike in this case, the plaintiff in *Hebb* "was the owner and holder, for value, of the note and mortgage in question and purchased and acquired the premises at a mortgage sale." *Hebb*, 290 Mich at 429.

In *Savage*, 287 Mich at 193-195, our Supreme Court held:

[N]o good reason appears for holding that the mere simultaneous giving of a note should nullify the obligation of the mortgagor expressed in the covenant. Always a covenant obligation has been considered more solemn and binding than a mere promise in writing not under seal. It is difficult to understand why the weaker obligation should destroy the stronger. Instead the more tenable conclusion would

-5-

seem to be that the condition of the loan by the mortgagee was that the borrower should not only promise to pay but that he should also covenant under seal to pay. By so doing the borrow extends the term of his personal liability. Such a construction renders both the note and the mortgage covenant operative. To hold otherwise is to render the covenant (the more sacred obligation of the two) an absolute nullity.

However, like the plaintiff in *Hebb*, the plaintiff in *Savage* "brought foreclosure proceedings in equity" and sued the defendant to recover a deficiency after a foreclosure sale. *Hebb* and *Savage* are distinguishable from the instant case because RCS's predecessor in interest did not bid on the property at the foreclosure sale, leading to the extinguishment of the second mortgage and the right to enforce the mortgage and its covenants. As a result, RCS's lawsuit was filed on the basis of the note and the six-year statute of limitations applies.

We affirm. Matthews as the prevailing party may tax costs pursuant to MCR 7.219(F).


/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle