*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LADOUCE DENTAL LABORATORY
COMPANY, INC,

Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

Defendant-Appellee.

UNPUBLISHED
March 23, 2026
1:37 PM

No. 370507
Court of Claims
LC No. 21-000194-MT

Before: RIORDAN, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Plaintiff, LaDouce Dental Laboratory Co., Inc., appeals by right the order denying its motion for summary disposition under MCR 2.116(C)(10), and granting the competing (C)(10) motion filed by defendant, the Department of Treasury. The motions concerned whether plaintiff owed sales tax for some of its sales, or whether all of its sales were tax-exempt. We affirm.

## I. BACKGROUND

Plaintiff describes itself as "a Michigan Corporation . . . which manufactures custom-made dental products upon special orders received from licensed dental practitioners who then resell the same dental products to their patients." Defendant audited plaintiff for the 2017 and 2018 tax years, and determined that some of plaintiff's products were subject to the sales tax that had not been paid. While most of plaintiff's products were tax-exempt dental prostheses, defendant's auditor determined that some, including "bite splints, bleaching trays, and sport guards," were subject to the sales tax. The auditor requested "a detailed breakdown of [plaintiff's] sales by product-type" to determine the exact amount of taxable sales plaintiff owed tax on, but plaintiff did not provide enough information to allow that calculation, leaving the auditor to estimate the amount of sales tax owed. To do so, the auditor went on plaintiff's website to see its product offerings and determined that 1 out of 12 was taxable, which corresponded to 8.3% of the products, which he then multiplied by plaintiff's total sales, and then multiplied by the 6% sales tax rate. Defendant recommended assessing plaintiff $6,221.50, plus a $636 penalty, plus interest, for the

2017 tax year, and assessing plaintiff $9,966.54, plus a $997 penalty, plus interest for the 2018 tax year.

After an informal conference, defendant sustained the audit findings, and issued its "Final Bill for Taxes Due." For the 2017 tax year, defendant assessed $6,221.50, plus a $636 penalty, plus $1,171.66 in interest, for a total of $8,029.16. For the 2018 tax year, defendant assessed $9,966.54, plus a $997 penalty, plus $1,326.93 in interest, for a total of $12,290.47.

In the Court of Claims, plaintiff alleged that it sold its products exclusively to licensed dental practitioners for them to resell, conducted no retail sales to the general public, and was entirely exempt from the sales tax. Plaintiff requested that the Court of Claims reverse the entirety of both the 2017 and 2018 sales tax assessments. In lieu of an answer to the complaint, defendant moved for summary disposition, arguing that plaintiff owed $1,341 in 2017 sales tax that was uncontested, which under MCL 205.22(1) did not allow plaintiff to appeal even the contested sales tax for 2017 and 2018 to the Court of Claims. Defendant requested that the court grant summary disposition pursuant to MCR 2.116(C)(4), and dismiss the complaint. The trial court granted the motion for summary disposition with respect to the 2017 assessment, but denied it with respect to the 2018 assessment.

Defendant then filed another motion for summary disposition, this time based on MCR 2.116(C)(10). Although the original auditor was no longer employed with defendant, defendant included an affidavit from Elaine Van Buskirk, the audit supervisor in the case, explaining the factual basis for concluding plaintiff was not exempt from the sales tax. Plaintiff filed a response, as well as a cross-motion for summary disposition under MCR 2.116(C)(10). The court granted defendant's motion for summary disposition, and denied plaintiff's cross-motion, concluding that plaintiff's sales were not subject to the sales tax exemption or the prosthesis exemption, and later denied plaintiff's motion for reconsideration.

## II. ANALYSIS

Plaintiff makes two challenges to the trial court's granting of defendant's motion for summary disposition. First, plaintiff argues that the trial court improperly relied on inadmissible evidence in granting the motion. Second, plaintiff argues that the material facts show that it was entitled to either the sales tax exemption or prosthesis exemption, and thus summary disposition in its favor was warranted.

## A. STANDARDS OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition," *Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 52; 760 NW2d 811 (2008), as we do regarding the "interpretation and application of statutes, court rules, and rules of evidence," *Donkers v Kovach*, 277 Mich App 366, 369; 745 NW2d 154 (2007).

"A motion under Subrule (C)(10) tests the factual support for a party's cause of action." *Cetera v Mileto*, 342 Mich App 441, 447; 995 NW2d 838 (2022). Under MCR 2.116(C)(10), summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." When reviewing such a motion, the court considers affidavits,

pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). The court should consider the record evidence itself as well as all reasonable inferences drawn from it. *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 202; 544 NW2d 727 (1996). "The affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties, must be considered by the court when the motion is based on subrule (C)(1)-(7) or (10)." MCR 2.116(G)(5).

"The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion." *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). "However, although the evidence must be substantively admissible, it does not have to be in admissible form." *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009). The "adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4).

## B. SUMMARY DISPOSITION EVIDENCE

Plaintiff argues that the audit report and its attached exhibits were inadmissible hearsay because they were not accompanied by an affidavit from the auditor, as they were instead accompanied by the auditor's supervisor.

Contrary to plaintiff's argument, the trial court did not rely on hearsay for its summary disposition decision. First, as the trial court concluded, the affiant had personal knowledge of the contents of the affidavit and audit sufficient to satisfy both MRE 602 and 901(a). Plaintiff seizes upon Van Buskirk's acknowledgement that part of her information came from "employees whom I supervise." But Van Buskirk was an audit supervisor, and far from being the random employee who just read the auditor report, as plaintiff suggests, she was assigned to this case as well. Van Buskirk relied on her personal knowledge (as well as information from her auditor), which included directly participating in "the informal conference stage." Although it may have been better if the auditor himself were available for this purpose, Van Buskirk's affidavit was sufficient to authenticate the audit report. See MRE 901(a). Her statements in her affidavit were also sufficiently based on her own personal knowledge of the case to not constitute hearsay. See MRE 602; MRE 801(c).[1]

"Hearsay is not admissible unless these rules provide otherwise." MRE 802. MRE 801(c) provides as follows:

"Hearsay" means a statement that:

---

[1] It is worth noting that the court did not just accept Van Buskirk's or the auditor's conclusions, but instead itself carefully analyzed the numbers before it. The court saw for itself that plaintiff still failed to provide the proper documentation, years after the audit started.

(1) the declarant does not make while testifying at the current trial or hearing; and

(2) a party offers in evidence to prove the truth of the matter asserted in the statement.

MRE 803(6) sets forth the following hearsay exception:

A record of an act, transaction, occurrence, event, condition, opinion, or diagnosis if:

(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with a rule prescribed by the Supreme Court or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

As a preliminary matter, plaintiff seems to be challenging the admissibility of the form of the evidence in the way the *Barnard Mfg Co, Inc* Court refuted. Plaintiff essentially concedes that the evidence would cause no admissibility concerns if it had been accompanied by an affidavit from the auditor. However, defendant needed only "a plausible basis for the admission" of the audit report and its exhibits, not to have completed every step toward ensuring admissibility, as would be required at trial. *Barnard Mfg Co, Inc*, 285 Mich App at 373.

In *Barnard Mfg Co, Inc*, the trial court granted the plaintiff's motion for summary disposition under MCR 2.116(C)(10). On appeal, the defendant argued that the trial court should not have considered invoices, or the affidavit submitted with them, "because the invoices were not substantiated or otherwise verified by an officer, director, or employee." *Id*. at 372-373. This Court agreed with the defendant "that the affidavit submitted with the invoices was not properly made on the personal knowledge of the affiant." *Id*. at 373. But, this Court ruled that "even assuming that the affidavit itself was not substantively admissible, the trial court nevertheless could still consider the invoices." *Id*. This Court explained that at the summary disposition stage, evidence "must be admissible in content . . . . Occasional statements in cases that the party opposing summary judgment must present admissible evidence . . . should be understood in this light, as referring to the content or substance, rather than the form, of the submission." *Id*., quoting *Maiden*, 461 Mich at 124 n 6 (quotation marks omitted).

The defendant did "not argue that the invoices are inherently inadmissible; they argue that [the plaintiff] failed to lay a proper foundation for their admission." *Barnard Mfg Co, Inc*, 285 Mich App at 373. This Court ruled that the plaintiff "did not have to lay the foundation for the admission of the invoices in order for the court to consider them on a motion for summary disposition as long as there was a plausible basis for the admission of the invoices." *Id*. This Court stated that "[w]ith a proper foundation, the invoices *would* be admissible as records of regularly conducted activity. See MRE 803(6)." *Id*. at 373-374. This Court ruled that "the trial court properly considered the invoices." *Id*. at 374.

Plaintiff's hearsay challenge to the trial court's consideration of the affidavit and exhibits fails. Although plaintiff did not timely preserve its argument that the business record exception to the hearsay rule contained in MRE 803(6) did not apply, see *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023) ("[i]n civil cases, Michigan follows the raise or waive rule of appellate review[,]" which obligates a litigant to "preserve an issue for appellate review") (quotation marks and citation omitted), the exception did apply. The audit report was not generated in anticipation of litigation, but was prepared prior to the informal conference. Thus, *Attorney General v John A Biewer Co, Inc*., 140 Mich App 1; 363 NW2d 712 (1985), did not preclude the court's consideration of the evidence. See also *Beach v State Farm Mut Auto Ins Co*, 216 Mich App 612, 620; 550 NW2d 580 (1996).

For most of the same reasons, plaintiff offers the general argument that it was deprived of due process because the trial court did not adhere to proper MCR 2.116(C)(10) summary-disposition standards, thereby depriving it of its due-process rights to trial.

Defendant correctly points out that plaintiff fails to recognize an important wrinkle concerning the applicable standard of review. Although the evidence was to be viewed in the light most favorable to plaintiff, *Johnson*, 502 Mich at 761, defendant's ruling was already completed, and was itself entitled to some deference, see *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 42; 703 NW2d 822 (2005). Because plaintiff provided incomplete information originally, defendant came to a reasonable conclusion, and plaintiff had to show that defendant's estimated assessments were inaccurate. See *id*. at 42-43. Instead, plaintiff continued to fail to provide the evidence that might have done so, whether because it was not prepared, because it had kept bad records and therefore simply did not have the pertinent information at its disposal, or because the products at issue had not actually yielded collections of the sales tax downstream. Whatever the case, the court provided plaintiff every opportunity to actually show that the challenged tax assessments were inaccurate, even at that late hour.

Plaintiff discounts the importance of being obliged to establish a *genuine* issue of material fact to avoid summary disposition under MCR 2.116(C)(10). Plaintiff is correct that "a trial court may not make findings of fact" at this stage. *Jackhill Oil Co v Powell Prod, Inc*, 210 Mich App 114, 117; 532 NW2d 866 (1995). But when the court referenced factual information involved in the case, it was to uncontested facts. The court analyzed the factual support that each party presented for their respective positions, and how that connected to what the law required, which was its proper role when deciding MCR 2.116(C)(10) motions. See *Cetera*, 342 Mich App at 447; *Baker*, 215 Mich App at 202 ("[t]he court's task is to review the record evidence, and all reasonable inferences drawn from it"); *Maiden*, 461 Mich at 121 (a court "consider[s] the substantively admissible evidence"); MCR 2.116(G)(5) ("The affidavits, together with the pleadings,

depositions, admissions, and documentary evidence then filed in the action or submitted by the parties, must be considered by the court when the motion is based on subrule (C)(1)-(7) or (10).”); MCR 2.116(G)(4). The court did not overstep by analyzing the evidence the parties provided, analyzing what the law requires, and noting the gaps that existed. The trial court did not deprive plaintiff of due process.

C. SALES TAX EXEMPTION

The primary goal when construing a statute “is to give effect to the intent of the Legislature.” *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007). A term in a statute should first be given the meaning “readily discernable from reading the statute itself,” if such a meaning is evident. *Auto-Owners Ins Co v Dep't of Treasury*, 313 Mich App 56, 70 n 2; 880 NW2d 337 (2015).

To receive an exemption from the General Sales Tax Act, a seller must provide evidence that the sales tax is being ultimately collected on the sales. The trial court correctly ruled that plaintiff failed to do this.

The General Sales Tax Act, MCL 205.51 *et seq*., levies on “all persons engaged in the business of making sales at retail, by which ownership of tangible personal property is transferred for consideration, an annual tax for the privilege of engaging in that business equal to 6% of the gross proceeds of the business . . . .” MCL 205.52(1). MCL 205.51(1)(b) defines “sale at retail” as “a sale, lease, or rental of tangible personal property for any purpose other than for resale, sublease, or subrent.” “[T]he legal responsibility for the sales tax falls on the retail seller . . . .” *Andrie Inc v Dep't of Treasury*, 496 Mich 161, 169; 853 NW2d 310 (2014). “The retail seller is authorized—but not obligated—to pass the economic burden of the sales tax by collecting the tax at the point of sale from the consumer.” *Id*. “But whether the consumer remits sales tax to the retail seller or the seller pays the sales tax from another source, the seller is responsible for remitting the sales tax to the department, which tax is calculated as a percentage of the seller's gross proceeds in a taxable period.” *Id*.

MCL 205.68 provides in pertinent part as follows:

> (1) A person liable for any tax imposed under this act shall keep in a paper, electronic, or digital format an accurate and complete beginning and annual inventory and purchase records of additions to inventory, complete daily sales records, receipts, invoices, bills of lading, and all pertinent documents in a form the department requires. Except as otherwise provided for a person described under subsection (6), if an exemption from the tax under this act is claimed by a person because the sale is for resale at retail, a record must be kept of the sales tax license number if the person has a sales tax license. These records must be retained for a period of 4 years after the tax imposed under this act to which the records apply is due or as otherwise provided by law.

> (2) If the department considers it necessary, the department may require a person, by notice served upon that person, to make a return, render under oath

-6-

certain statements, or keep certain records the department considers sufficient to show whether or not that person is liable for the tax under this act.

(3) A person knowingly making a sale of tangible personal property for the purpose of resale at retail to another person not licensed under this act is liable for the tax under this act unless the transaction is exempt under the provisions of section 4k.

(4) If a taxpayer fails to file a return or to maintain or preserve sufficient records as prescribed in this section, or the department has reason to believe that any records maintained or returns filed are inaccurate or incomplete and that additional taxes are due, the department may assess the amount of the tax due from the taxpayer based on an indirect audit procedure or any other information that is available or that may become available to the department. That assessment is considered prima facie correct for the purpose of this act and the burden of proof of refuting the assessment is upon the taxpayer. An indirect audit of a taxpayer under this subsection . . . must include all of the following elements:

(a) A review of the taxpayer's books and records. The department may use an indirect method to test the accuracy of the taxpayer's books and records.

(b) Both the credibility of the evidence and the reasonableness of the conclusion must be evaluated before any determination of tax liability is made.

(c) The department may use any method to reconstruct income, deductions, or expenses that is reasonable under the circumstances. The department may use third-party records in the reconstruction.

(d) The department shall investigate all reasonable evidence presented by the taxpayer refuting the computation.

\* \* \*

(8) As used in this section:

(a) "Indirect audit procedure" is an audit method that involves the determination of tax liabilities through an analysis of a taxpayer's business activities using information from a range of sources beyond the taxpayer's declaration and formal books and records.

(b) "Sufficient records" means records that meet the department's need to determine the tax due under this act.

MCL 205.53(1) provides that "if a person engages or continues in a business for which a privilege tax is imposed by this act, the person shall, under rules the department prescribes, apply for and obtain from the department a license to engage in and to conduct that business for the current tax year."

"Because tax exemptions are disfavored, the burden of proving entitlement to an exemption rests on . . . the party asserting the right to the exemption." *Elias Bros Restaurants, Inc v Dep't of Treasury*, 452 Mich 144, 150; 549 NW2d 837 (1996). "[T]ax exemptions are strictly construed against the taxpayer because exemptions represent the antithesis of tax equality." *Id*. According to the Supreme Court, "[r]ecordkeeping requirements exist so that the *department* may confirm the tax liability of a taxpayer." *Andrie Inc*, 496 Mich at 178, citing MCL 205.68. "They do not exist to facilitate a taxpayer's claim of an exemption." *Id*. at 178.

"As a general rule, sales tax applies only to sales of tangible personal property, not sales of services." *Catalina Mktg Sales Corp v Dep't of Treasury*, 470 Mich 13, 19; 678 NW2d 619 (2004). "When a single transaction . . . involves both the provision of services and the transfer of tangible personal property, it must be categorized as either a service or a tangible property transaction." *Id*.

> The "incidental to service" test looks objectively at the entire transaction to determine whether the transaction is principally a transfer of tangible personal property or a provision of a service. The sales tax is a tax on sellers for the privilege of engaging in the business of retail sales. If the consideration paid in a transaction is not paid for the transfer of the tangible property, but for the service provided, and the transfer of the tangible property is only incidental to the service provided, the transaction is not a sale at retail under MCL 205.51(1)(b). [*Id*. at 24-25.]

According to plaintiff, none of its sales fit the definition in MCL 205.51(1)(b), as they fell under the resale exemption from the sales tax, and it fully complied with what MCL 205.68 required to obtain that exemption. In resolving this issue, the trial court noted that plaintiff had "presented the Court with several of its customer's exemption certificates, as well as customer and product sales listings," having "presented a list of 149 customers" with information on "how many invoices had been sent to each customer, and their payment histories," along with "product lists" detailing "the many types of products plaintiff produces, as well as the total units sold, and the revenue from the sales." The court further noted that plaintiff presented an affidavit averring "that all of the products sold by plaintiff were sold to dentists, rather than members of the general public." Plaintiff thus did maintain, and provide to the trial court, some of the documentation required by MCL 205.68(1).

Despite this, the trial court ruled that plaintiff had "not produced detailed sales reports to match purchases or other documentation to tie product sales to each customer." Of the 149 customers, plaintiff produced only 55 exemption certificates, all of which cited the dental-prosthesis exemption instead of the resale exemption. Further, "state tax identification numbers for only 80" of the customers were included, and information concerning "which of plaintiff's products each customer purchased" was not included. The provided information indicated that the products in question were all going to dentists, but was notably silent on whether "everything sold is in turn sold to the dentists' customers, or whether the dentists charge sales tax on the items." Nor, according to the court, did plaintiff include any affidavits from client dentists, who might have confirmed that the sale tax was being collected upon resale.

Plaintiff does not dispute these gaps in the information provided. Instead, it argues that any of the missing state tax identification numbers involved customers who did not have them, and therefore MCL 205.68(1) required nothing of plaintiff with respect to them. Plaintiff further argues that it would be an absurd interpretation of the General Sales Tax Act to require a company seeking a resale exemption to document that its customers are actually collecting pertinent sales taxes.

The only authority plaintiff cites for its argument that it fulfilled its duty under MCL 205.68 is the text of the statute itself, which states that, "[a] record must be kept of the sales tax license number *if* the person has a sales tax license." MCL 205.68(1) (emphasis added). Plaintiff simply states that the 69 missing license numbers represented customers who must not have had sales tax licenses, and therefore MCL 205.68 required nothing more. In other words, plaintiff tries to frame MCL 205.68 as imposing no responsibilities on manufacturers in connection with sales to a business without a license. But MCL 205.68(1) to (4) explicitly requires sellers wanting to avoid paying the sales tax to provide enough information to the Department to show that they are operating as mere wholesalers, and that the correct amounts of sales taxes are still being collected. Plaintiff, however, did not provide any evidence that that is the reason those license numbers were not included. And, if the dentists that plaintiff was selling these prostheses products to were unlicensed retail sellers, MCL 205.68(3) explicitly puts the sales tax back on the original seller when knowingly selling to an unlicensed retail seller ("A person knowingly making a sale of tangible personal property for the purpose of resale at retail to another person not licensed under this act is liable for the tax under this act . . . .").

Plaintiff's absurdity argument is also without merit, and based upon a questionable doctrine. See *Detroit Int'l Bridge Co v Commodities Export Co*, 279 Mich App 662, 674; 760 NW2d 565 (2008). By statute, the default situation is for the 6% sales tax to be due from the business. MCL 205.52(1). In exchange for providing ways to avoid that tax, it is not absurd to require documentation showing that pertinent sales taxes are actually coming in from the retail seller to whom the business is selling its wares. The plain text of MCL 205.68 requires a fair amount of information preservation on plaintiff's part, with access given to the Department, and enforcement of those requirements is reasonable when a company making products claims a total exemption from the sales tax.

## D. PROSTHESIS EXEMPTION

In its response to defendant's second motion for summary disposition, plaintiff argued in part that it was entitled to complete exemption from the sales tax under the dental prosthesis exemption, MCL 205.54a(1)(r). Defendant's reply brief argued that plaintiff had not raised this exemption in its complaint, and therefore it was not properly before the court. The trial court agreed, and rejected plaintiff's argument to the contrary in its motion for reconsideration. The trial court properly treated plaintiff's argument invoking the dental-prosthesis tax exemption as not properly plead.

"Michigan follows the rule of general fact-based pleading." *Rymal v Baergen*, 262 Mich App 274, 301 n 6; 686 NW2d 241 (2004). "[T]he primary function of a pleading in Michigan is to give notice of the nature of the claim or defense sufficient to permit the opposite party to take a

responsive position." *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 317; 503 NW2d 758 (1993). MCR 2.111(B)(1) provides that a complaint must contain "[a] statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend[.]" MCR 2.116(I)(5) provides that if a party moves for summary disposition under MCR 2.116(C)(10), "the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." "[This Court] will look beyond mere procedural labels and read the complaint as a whole when ascertaining the exact nature of a plaintiff's claims." *Johnson v QFD, Inc*, 292 Mich App 359, 368; 807 NW2d 719 (2011).

The trial court acknowledged that, during the informal conference proceedings before plaintiff filed its complaint, "plaintiff maintained, albeit in passing," that all of its sales were of dental prostheses.[2] But the court further noted that "[t]he thrust of plaintiff's objections . . . relied on the resale exemption in MCL 205.51(1)(b)," and that after the hearing referee ruled against plaintiff's prostheses interpretation, "plaintiff's complaint only discusse[d] the application of MCL 205.51(1)(b)." The trial court concluded that "defendant could reasonably have determined that plaintiff had abandoned" the prosthesis-exemption argument, that defendant was put on notice of only plaintiff's resale-exemption argument, and that plaintiff had not asked to amend its complaint to add the prosthesis-exemption allegations.

Plaintiff focuses on its complaint and initial disclosures as the two places where it notified defendant that it was pursuing the prosthesis exemption. Close examination of the October 20, 2021 complaint, however, only bolsters defendant's position. The two sentences in the complaint with mention of "dental prosthetics" included no mention of the statutory exemption, MCL 205.54a(1)(r), and actually indicated that plaintiff also sold "other custom-made dental products" that did not fall under the "dental prosthetics" umbrella. When the complaint did speak to why an exemption applied, it characterized plaintiff as the first seller before its customers "resell the products," and asserted that plaintiff had an "exemption as a non-retail seller."

Plaintiff's initial disclosures included the assertion that plaintiff "only sells dental prosthetics for resale." Plaintiff described its position by asserting that the auditor determined that "8.3% of the Plaintiff's total sales were not a 'dental prosthetics' [sic] and therefore subject to sales tax, despite the fact that 100% of Plaintiff's sales are made to dentists who resell the products to their patients, and none of the Plaintiff[']s sales are direct to consumers" and therefore "none . . . are retail sales pursuant to the Sales Tax Act." In the section describing the documents on which plaintiff intended to rely, it included the statement "LaDouce sales records reflecting inventory and sales for the relevant tax year (2018) supporting the dental prosthetic exemption."

Likewise, plaintiff's complaint comports with the auditor's finding that some of the products plaintiff sold were not in the prosthetic category, and focuses on the reseller exemption.

---

[2] MCL 205.54a(1)(r) provides that "[t]he sale of a dental prosthesis" is exempt from sales tax. " 'Dental prosthesis' means a bridge, crown, denture, or other similar artificial device used to repair or replace intraoral defects such as missing teeth, missing parts of teeth, and missing soft or hard structures of the jaw or palate." MCL 205.51a(f).

-10-

The initial disclosures do mention the prosthetic exemption, but that one mention is tacked onto a sentence focusing on which documents will be used. There is no mention of the exemption in the section discussing legal theories where it naturally belonged. And despite the trial court seemingly being open to it, plaintiff never sought to amend its complaint to make clear that it was also pursuing the prosthetic exemption. On appeal, plaintiff offers no explanation for why it never moved to amend its complaint. Although the prosthetic argument should not have been a complete surprise to defendant when it did eventually emerge, plaintiff had by then spent considerable time seemingly focusing its case on a different exemption. For these reasons, the trial court did not err by declining to consider the prosthesis-exemption argument.

## E. DENTAL LABORATORY

Finally, although plaintiff correctly argues that it is a dental laboratory, this does not totally exempt plaintiff from the obligation to collect sales tax.

MCL 333.16643 provides as follows:

> A dental laboratory shall not advertise, solicit, represent, or hold itself out to the general public that it will sell, supply, furnish, construct, repair, or alter a prosthetic denture, bridge, orthodontic or other appliance, or structure to be used as a substitute for or as a part of human teeth or jaws or associated structures or for the correction of malocclusions or deformities.

MCL 333.16647 provides as follows:

> (1) The board or an agent or employee of the board may inspect a dental laboratory to determine the laboratory's compliance with this part.
>
> (2) A dental laboratory which violates this part or refuses to allow the board or an agent or employee of the board to inspect a work authorization, prosthetic denture, bridge, orthodontic or other appliance, or structure to be used as a substitute for or as a part of human teeth or jaws or associated structures or for the correction of malocclusions or deformities in its possession is guilty of a misdemeanor.

Plaintiff contends that it is a dental laboratory, a status defendant does not appear to contest. But plaintiff fails to argue convincingly how that alone guarantees that it is exempt from any responsibility for collecting sales tax. MCL 333.16643 and MCL 333.16647(2), on which plaintiff relies, establish and penalize as a misdemeanor the direct sale of prosthetics to the public by dental laboratories without a dentist's involvement.

Here, there does not appear to be any allegation that plaintiff has violated those statutes, and the trial court accepted its position that it had sold "its products only to dentists in connection with a specific work order." But to then jump to the conclusion that all of its activity is exempt from sales tax goes too far, and plaintiff fails to explain any such connection. As noted, the trial court stressed plaintiff's deficiency in providing "the requisite sales tax license records" for many

of the dentists to whom it sold its products. Even fully accepting that plaintiff is a dental laboratory fully complying with MCL 333.16643 and MCL 333.16647 does not mean that nothing more is needed to establish plaintiff's operations as wholly exempt from the sales tax. Defendant correctly points out that if that were so, all of the various other exemptions would be superfluous.

Affirmed.

/s/ Michael J. Riordan
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado